# SUPREME COURT.

## John·B. Monnot, and others, agt. Joseph Husson.

Action of ejectment; the premises in question being part of a large farm at Clason Point, Westchester County, both parties claim title through A. W. Clason.

On January 31st, 1848, A. W. Clason, conveyed to W. H. Payne, a portion of his farm at Clason Point, Westchester County, containing 15 72–100 acres, by metes and bounds. It is, and was intended to operate as a mortgage, the consideration money being a loan to A. W. Clason, who intended to use, and did use the money in building a house, and otherwise improving the property embraced in the deed. The house so erected, was intended as a dwelling house for A. W. Clason, jr., who entered upon the occupancy of the property, removed a stone wall forming the westerly boundary line, and with the assent of his father, took possession of the tract in dispute, enclosed it, improved it and occupied it during several years. Subsequently, (in 1852,) A. W. Clason, conveyed an equal undivided half of the residue of the farm to Isaac C. Delaplaine, (one of the plaintiffs,) and the following year, A. W. Clason's executors conveyed the other half to the other plaintiffs.

The defendant, W. H. Payne's grantee, claimed in this action,

1. That he was entitled to the possession of the tract in dispute on the ground that there was an adverse possession as against the plaintiff, and

2. That there was a practical location by A. W. Clason, and W. H. Payne, of the boundary line, between them and that the tract in question was on his side of that line.

3. That A. W. Clason, having allowed W. H. Payne to improve the property, to move the old wall, and otherwise exercise acts of ownership in regard to the disputed tract before the deeds to plaintiff, he was *estopped* from claiming possession of the property.

The jury, under the charge of the court, found a verdict for the defendant:

*Held,* on appeal: It being undisputed, that the stone wall, referred to in the deed to Payne at the time of its execution, was standing, and it being clearly shown by the evidence, that the property in dispute is not included within the boundaries of the premises descibed in that conveyance; but that it forms part of the land conveyed to the plaintiffs by their deeds: It follows as a necessary result, that the plaintiffs are entitled to recover, unless the facts adduced by the defendant are sufficient to prevent such recovery.

The answer to the claim of the defendant, that there was a settlement, and practical location of a boundary line between A. W. Clason and Payne, is, that there never was any dispute or question of any kind between the parties, in relation to the devision line between them. That, as given in the deed to Payne, it was clearly defined and admitted of no dispute, and all that was done by the elder Clason, in

Monnot agt. Husson.

removing the stone therefrom, and putting it in the new fence, was his own voluntary act, and without consultation with Payne, and not in any manner resulting from any claim by him or young Clason, that the line was wrong or should be changed on account of the improper location, or of any other reason whatsoever:

*Held*, as to the alleged *estoppel* on the part of A. W. Clason and his assigns, that there is nothing to show that any expense was incurred therefor at the instance of the father, or any promise or assurance that a conveyance would be made to the son for his benefit. What was done by the son was not inconsistent with a temporary occupation of the property free of rent, and the continued occupation by the father, and cannot in view of the relationship between the parties, and of the fact that the actual boundary must be presumed to have been known to both, be considered as a ground for an *estoppel* against the assertion by the father, of his legal right.

Even, were it otherwise, such *estoppel* could not operate against the plaintiffs, there being nothing in the facts to charge them or either of them, with notice of any equitable claim by young Clason, on the facts developed in this case ; the doctrine *of estoppel* appears to be more applicable, as against young Clason and the defendants, than as against any of the plaintiffs :

*Held*, that the evidence does not warrant the conclusion, that the land was held adversely, conceding that young Clason was in full occupation thereof ; that fact itself is *no more proof that he held it in hostility* than in subordination to the title of his father, and all the circumstances attending his possession are perfectly consistent with the latter construction of its character, and many of them clearly repudiate the idea of an adverse possession by him :

*Held*, further, that even, assuming that the possession was adverse, a decisive answer to the last position or claim of the defendant, is. that such possession alone is not sufficient to avoid a deed. The provision of the statute cited by him, (1 *Rev. Stat. p.*, 730 § 147,) is, that "every grant shall be absolutely void. if at the time of the delivery thereof, such lands shall be in the actual possession of a person, claiming *under title* adverse to that of the grantor."

There was no pretence of a claim under a title at the time of the execution of any of the deeds under which the plaintiffs claim :

*Held*, further, that the declaration of A. W. Clason, to the witness, Robinson, made after the execution of the deed to Payne, that he had given the land in question to his son, was clearly incompetent to prove title.

*Kings County, General Term, December,* 1866.

*Before* LOTT, SCHRUGHAM & J. F. BARNARD, *Justices.*

THIS was an action of ejectment brought to recover possession of land at Clason Point, Westchester County.

The facts sufficiently appear in the opinion of the court.

F. R. COUDERT and L. P. MILLER, *for appellant.*

S. E. LYON, *and respondent in person, for respondent.*

*By the court,* LOTT, J.—The premises in question are part of a large farm, formerly owned by Augustus W. Clason,

sen., and all the parties to this action, claim under him as the common source of title.

On the 31st day of January, 1848, he conveyed to William H. Payne, a portion of the farm, containing fifteen acres and seventy-two hundreths of an acre, by specific metes and bounds, describing the westerly line thereof as the westerly side of a stone fence particularly designated.

He subsequently, by deed dated the 1st day of July, 1852, conveyed an equal undivided one half part of the residue of the farm to Isaac C. Delaplaine, and the executor of his will after his death, by deed dated 1st December, 1853, conveyed the other half to the plaintiffs, Bradish Johnson, George W. Johnson, and Adam D. Logan, by a description, embracing first, the whole of the farm, and then excepting and reserving thereout, the piece or parcel of land, granted by the conveyance to William H. Payne, above mentioned by the same metes and bounds, and declaring it to be the same premises as therein described, referring to it by its date and record. William H. Payne, by deed dated 1st May, 1855, conveyed the part so granted to him, by the same description as that in the conveyance under which he held it, to the defendant, and also quit claimed it to him by a deed of the same date, all his right, title and interest in and to the land in question in this action.

A portion of the share of Delaplaine, was conveyed by him to the plaintiff, John B. Monnot, and the interest of Adam D. Logan, and George W. Johnson, has become vested in the plaintiffs, Bradish Johnson, John D. Johnson and Edwin A. Johnson.

The stone wall referred to in the deed to Payne, at the time of its execution was standing, and it is clearly shown by the evidence that the property in dispute is not included within the boundaries of the premises described in that conveyance; but that it forms a part of the land conveyed by the deed under which the plaintiffs claim.

It follows, as a necessary result, that the plaintiffs are

entitled to recover it, unless the facts hereinafter referred to are sufficient to prevent such recovery:

It appears that Augustus W. Clason, sen., wished to erect a dwelling-house on the land conveyed to Payne, and, instead of giving him a mortgage thereon, executed a deed thereof to him, as security for the money so borrowed, and other money advanced by him, it being apparently the understanding of all parties, that the property was to be held for the benefit of Clason, the younger, and that the arrangement was made for his accommodation.

A part of the stonewall spoken of was taken down, and a portion of the stone therein, was used in the construction of the dwellinghouse, and the residue was placed in a new fence, forming a part of the western boundary of the premises in controversy, and it is fairly inferrible from the declarations and acts of the elder Clason that he intended, that his son should have the benefit as well as the land in dispute, as that included in the deed to Payne, and his son went into the occupancy of the whole, and made improvements thereon; but no deed or instrument of any kind declaratory of such intent was ever executed.

The only written evidence he had of any right, was a lease of the part conveyed to Payne, at a rent equal to the interest of his advances.

Some of the money paid towards the erection of the new fence and the other improvements on the land in controversy, was paid for by Mr. Payne, but such payments were not made by him as owner, or as having the legal title, but as advances for Clason, sen., and for his account and benefit, and were included in the indebtedness secured by the deed to him.

It is also claimed by the defendant that the acts of Clason, the elder, amount to a settlement and practical location of the boundary between him and Payne, at the time of the erection of the new stone fence.

The answer to this claim is, that there never was any

Monnot agt. Husson.

dispute or question of any kind between the parties in relation to the division line between them. That as given in the deed to Payne, was clearly defined and admitted of no dispute, and all that was done by the elder Clason in removing the stone therefrom, and putting it in the new fence, was his own voluntary act, and without consultation with Payne, and not in any manner resulting from any claim by him or young Clason that the line was wrong, or should be changed on account of its improper location or for any other reason whatever.

It is further insisted that the elder Clason was *estopped* from claiming any interest in the premises in question, in consequence of his acquiescence in the erection by his son of a new barn, and other improvements made by him thereon. There is nothing to show that any expense was incurred therefor, at the instance of the father, or any promise or assurance that the conveyance of that portion would be made to the son for his benefit. What was done by the son was not inconsistent with a temporary occupation of the property free of rent, and the continued ownership by the father, and cannot in view of the relationship of the parties, and of the fact that the actual boundary must be presumed to have been known to both, be considered as a ground for an estoppel against the assertion by the father of his legal right; but if it were otherwise, it could not operate as against the plaintiffs. There is nothing in the facts to charge them or either of them with notice of any equitable claim by young Clason.

On the contrary, it appears from the testimony of Delaplaine, that the draft of the conveyance to him was received from young Clason, who was a lawyer, and attended to his fathers business; that the deed as executed was drawn in his office, that the title was passed and the purchase money paid in that office, and I conclude from the testimony, young Clason was present and took part in the business. Delaplaine also states, that he bought the

property under the description in the deed, and paid under it, and Mr. Logan states that on seeing the advertisements of sale by the executor of Mr. Clason, in the newspapers, and desiring a more definite description of the premises, he went to the office of the attorneys of the executors, one of whom was young Clason, and there understood on inquiry, that he would if he became a purchaser, have a half of the premises identical with that Delaplaine purchased, and his deed was referred to for the description in the agreement of purchase in which it was stated that the half purchased by him, Logan, and the parties associated with him, was " equal and in all respects the same as the other half conveyed by the deed, and was to be conveyed by all the same metes and bounds contained therein, and conveying the same quantity of land."

Under such circumstances, the doctrine of *estoppel* appears to be more applicable as against young Clason, and the defendant, than as against any of the plaintiffs.

It is also claimed by the defendant, that the plaintiff's deed for the parcel of land in question, is void as being a grant of land held adversely at the time it was made.

The evidence does not warrant the conclusion that the land was held adversely, conceding that Clason, the younger was in full occupation thereof; that fact itself is no more proof that he held it in hostility than in subordination to the title of his father, and all the circumstances attending his possession are perfectly consistent with the latter construction of its character, and many of them clearly repudiate the idea of an adverse possession by him; I will only allude to the following : He told Logan, after the purchase by him and his associates, that he thought it would be fair for him to have a conveyance of the property in dispute at a price commensurate with the proportionate value with the whole, on the basis of the price for their purchase, and that he never stated anything from which Logan inferred he had any claim thereto.

Delaplaine also testified that before the purchase by Husson, A. W. Clason, jr., offered to buy the premises in dispute of one, and the other owners of the fee, and Mr Payne told me I ought to have sold it. He adds, I submitted the proposition to my associate owners.

We agreed on a price which was named to A. W. Clason, jr., who said the price was too high, and he would not pay it.

These facts are inconsistent with a title in himself, or of any adverse claim thereto.

Assuming, however that the possession was adverse, a decisive answer to the last position or claim of the defendant is, that such possession alone is not sufficient to avoid a deed. The provision of the statute cited by him, (1 *Rev. St. p.*, 730 *Sec.*, 147,) is that "every grant shall be absolutely void if at the time of delivery thereof, such lands be in the actual possession of a person claiming under a title adverse to that of the grantor."

There was no pretence of a claim under a title at the time of the execution of any of the deeds, under which the plaintiffs claim.

These views, conceding all the evidence to have been admissible, show that the defendant has no valid defense to the action.

Some of the proof was, however, taken subject to the plaintiff's exception and was in our opinion inadmissible. The declaration of Clason, sen., to the witness, Robinson, made in February or March, after the execution of the deed to Payne that he had given the land in question to his son, was clearly incompetent to prove title.

The plaintiffs, for the reason stated, were entitled to a new trial on the motion therefor, and the order denying it must be reversed, and a new trial ordered, costs to abide the event.